**BAKER & HOSTETLER LLP**
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Attorneys for Plaintiffs
The North Face Apparel Corp. and
VF Outdoor, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NORTH FACE APPAREL CORP. and VF OUTDOOR, INC.,<br><br>               Plaintiffs,<br><br>            -against-<br><br>VARIOUS JOHN DOES; JANE DOES; and XYZ COMPANIES,<br><br>               Defendants. | CIVIL ACTION NO.<br><br>15 CV _____ |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR AN EX PARTE TEMPORARY RESTRAINING
ORDER; SEIZURE ORDER; NOTICE SETTING PRELIMINARY INJUNCTION
HEARING; ORDER TO ISSUE JOHN DOE SUMMONSES; ORDER SEALING THE
COURT FILE; AND ORDER SETTING BOND**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................ 1

    A.    The Present Action.............................................................. 2

    B.    The North Face Apparel Corp. and VF Outdoor, Inc. ........................... 2

    C.    Defendants' Wrongful Acts .................................................... 2

II.   PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER
    AND A PRELIMINARY INJUNCTION IN THIS COUNTERFEITING CASE ........... 3

    A.    Defendants' Acts Threaten Irreparable Harm.................................... 4

    B.    The Harm to the Plaintiffs Greatly Outweighs Any Hypothetical Injury to
        the Defendants ................................................................ 4

    C.    Plaintiffs Will Succeed on the Merits of This Action........................... 5

        1.    Plaintiffs' Right to Relief Under the Trademark Act of 1946 ................... 6

            a.    The Strength of Plaintiffs' Marks ................................... 7

            b.    The Degree of Similarity Between the Marks ........................ 7

            c.    The Closeness of the Products ...................................... 8

            d.    Defendants' Purpose in Adopting Plaintiffs' Trademarks............ 8

        2.    Plaintiffs' Right to Relief Under Common Law ............................. 8

        3.    Plaintiffs' Right to Relief Under Section 43(a) of the Trademark
            Act of 1946 ............................................................. 10

        4.    Plaintiffs' Right to Relief Under Section 43(c) of the Trademark
            Act of 1946 ............................................................. 10

            a.    Ownership of a Famous and Distinctive Mark ........................ 11

            b.    Likelihood of Dilution ............................................. 12

                i.    Likelihood of Dilution by Tarnishment ...................... 12

                ii.   Likelihood of Dilution by Blurring.......................... 13

III.  BECAUSE THE ULTIMATE RELIEF PLAINTIFFS SEEK IN THIS ACTION
    WILL ALMOST CERTAINLY BE FRUSTRATED IF NOTICE IS GIVEN, A
    TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER SHOULD BE
    ISSUED EX PARTE................................................................ 15

    A.    Plaintiffs' Prosecution of This Action Will be Rendered Futile if a
        Temporary Restraining Order and Seizure Order is Not Issued Ex Parte or
        if Defendants Receive Notice of the Pendency of This Action Prior to
        Execution of the Seizure Order................................................ 15

    B.    The Lanham Act Authorizes Seizure of Defendants' Infringing Products.......... 17

i

## TABLE OF CONTENTS

**Page**

IV.    CONCLUSION................................................................................................... 17

## TABLE OF AUTHORITIES

### Cases

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972)................................ 7

*Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung.*, No. 87 Civ. 8989, 1990

    U.S. Dist. LEXIS 3953 (S.D.N.Y. April 10, 1990) ................................................................. 17

*American Ass'n for Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244 (D.D.C. 1980) .. 7

*American Home Products v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1977)............................ 7

*Apollo Distrib. Co. v. Apollo Imports, Inc.*, 341 F. Supp. 455 (S.D.N.Y. 1972)...................... 9, 10

*Armco Steel Corp. v. Int'l Armament Corp.*, 249 F. Supp. 954 (D.D.C. 1966)............................. 8

*Arthur Guinness & Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095 (2d Cir. 1984) ............ 4

*Bacardi & Co. v. N.Y. Lighter Co.*, No. 97-CV-7140, 2000 U.S. Dist. LEXIS 19852 (E.D.N.Y.

    Sept. 5, 2000) ..................................................................................................................... 6

*Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000) .............. 9

*Big Star Entertainment, Inc. v. Next Big Star, Inc.*, 105 F. Supp.2d 185 (S.D.N.Y. 2000)............ 7

*Blue Bell, Inc. v. Maverick Sportswear, Inc.*, 184 U.S.P.Q. 77 (S.D.N.Y. 1974)........................... 5

*Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.*, 1995 U.S. Dist. LEXIS 12849 (S.D.N.Y.

    1995) ................................................................................................................................... 8

*CBS, Inc. v. Cineamerica Distributing Corp.*, No. 78 Civ. 2245, 1978 U.S. Dist. LEXIS 14919

    (S.D.N.Y. Oct. 17, 1978) ..................................................................................................... 4

*Cf. National Info. Corp. v. Kiplinger Washington Editors*, 771 F. Supp. 460 (D.D.C.1991) ........ 8

*Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F.Supp.2d 432

    (S.D.N.Y. 2003) .................................................................................................................. 4

*Clinique*, 945 F. Supp. at 561 ...................................................................................... passim

*Colgate-Palmolive Co. v. North Am. Chem. Corp.*, 238 F. Supp. 81 (S.D.N.Y. 1964)................. 5

*Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979) ......... 4

*Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39 (2d Cir. 1994)).......................................... 12, 13, 14

*Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108 (S.D.N.Y 1981) ....................... 8

*Envirosafe Servies, Inc. v. Envirosure Mgmt. Co.*, 1989 U.S. Dist. LEXIS 70 (E.D. Pa. 1989).. 10

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000); ............. 4, 14

*Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248 (S.D.
  Fla. 1982) ................................................................................................................ 17

*Florists' Transworld Delivery, Inc. v. Originals Florist & Gifts, Inc.*, No. 00 Civ. 4458, 200 U.S.
  Dist. LEXIS 16869 (N.D. Ill. Nov. 9, 2000).................................................................... 5

*Fund of Funds, Ltd. v. First Am. Fund of Funds, Inc.*, 274 F. Supp. 517 (S.D.N.Y. 1967) ....... 8, 9

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) ............................... 4, 8

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir.
  1975) ...................................................................................................................... 6, 7

*Hartz & Co., Inc. v. Italia, Inc.*, 97 Civ. 5657 (RO), 1998 U.S.Dist. LEXIS 3716 at * 6 n.9
  (S.D.N.Y. Mar. 24, 1998) ............................................................................................ 11

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988).................................................... 4

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497 (2d Cir. 1996)...................... 11, 13

*Jeffrey Millstein, Inc. v. Gregor, Lawlor & Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995) ....................... 3

*Jeral Trading Corp. v. Weinstein*, 1995 U.S. Dist. LEXIS 20119 (S.D.N.Y. 1995).................... 4

*Joanna Farms Inc. v. Citrus Bowl Inc.*, 468 F. Supp. 866 (E.D.N.Y 1978).................................. 5

*Jordan v. Can You Imagine, Inc.*, No. 04 Civ. 4696, 2005 U.S. Dist. LEXIS 8726 (S.D.N.Y. May
  12, 2005) ................................................................................................................... 4

iv

*K.H. v. Vincent Smith School*, No. CV-06-0319, 2006 U.S. Dist LEXIS 22412 (E.D.N.Y. Mar. 29, 2006) ........................................................................................................... 4

*Leslie Fay Cos. v. Leslie Fay Cos.*, 216 Bankr. 117 (S.D.N.Y. 1997) ......................................... 14

*Londontown Mfg. Co. v. Cable Raincoat Co.*, 371 F. Supp. 1114 (S.D.N.Y. 1974) ..................... 8

*Lorillard Tobacco Co. v. Canstar (U.S.A.), Inc.*, No. 03 Civ. 4769, 2005 U.S. Dist. LEXIS 38414 (N.D. Ill. Aug. 24, 2005) ...................................................................................... 16

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108 (2d Cir. 2006) .......................... 7

*Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538 (2d Cir. 1956) ...................... 6

*Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, (2nd Cir. 1979) ................................................ 16, 18

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026 (2d Cir. 1989) ......... 12

*Miles Shoes, Inc. v. R.H. Macy & Co.*, 199 F.2d 602 (2d Cir. 1952), *cert. denied*, 345 U.S. 909 (1953) ........................................................................................................................ 8

*Miss Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir. 1969) ................................................ 6, 7

*Mister Softee, Inc. v. Valdez*, No. 01 Civ. 12742, 2002 U.S. Dist. LEXIS 6450 (S.D.N.Y. Apr. 15, 2002) .................................................................................................................... 8

*Mortellito v. Nina of California, Inc.*, 335 F. Supp. 1288 (S.D.N.Y. 1972) ....................... 6, 8, 10

*My-T Fine Corp. v. Samuels*, 69 F.2d 76 (2d Cir. 1934) ............................................................ 5

*Natural White, Inc. v. Dentorium Products Co.,* 2000 U.S.App. LEXIS 7755 (2d Cir. 2000) ...... 4

*Nature's Bounty, Inc. v. Super X Drugs Corp.*, 490 F. Supp 50 (E.D.N.Y. 1980) ......................... 7

*New York Yellow Pages, Inc. v. Citibank, N.A.*, 480 F. Supp 77 (S.D.N.Y. 1979) ....................... 7

*Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190 (2d Cir. 1971) ...................... 4

*Onan Corp. v. United States*, 476 F. Supp. 428 n.1 (D. Minn. 1979) ......................................... 16

*Oral-B Lab, Inc. v. Mi-Lor Corp.*, 810 F.2d 20 (2d Cir. 1987) ................................................... 6

*Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555 (S.D.N.Y. 1978) ................ 8

*Polymer Technology Corp. v. Mimran*, 37 F.3d 74 (2d Cir. 1994) ................................ 4

*Reddy Communications, Inc. v. Environmental Action Found.*, 471 F. Supp. 936 (D.D.C. 1979) 6

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1277

    (S.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995)) ............................................ 12

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Of Travel Dev.*, 955 F.

    Supp. 605 n.28 (E.D.Va. 1997) ................................................................ 14

*RJR Foods, Inc. v. White Rock Corp.*, 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y. 1978) ................ 7

*Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir. 1962) ..................... 5, 10

*Sears, Roebuck & Co. v. Sears Financial Network*, 576 F. Supp. 857 (D.D.C. 1983) ............. 9, 10

*Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127 (2d Cir. 1982) ..................... 6

*The Deal, LLC v. Korangy Publ'g*, 309 F. Supp. 2d 512 (S.D.N.Y. Jan. 21, 2004) ................... 7

*Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 Civ 4487, 2005 U.S. Dist. LEXIS 18137

    (S.D.N.Y. Aug. 24, 2005) ..................................................................... 8

*Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733 (S.D.N.Y.

    1997) .......................................................................................... 12

*Ventura Travelware Inc. v. A to Z Luggage Co.*, 1986 U.S. Dist. LEXIS 18022 (E.D.N.Y. 1986) 5

*Yale Elec. Corp. v. Robertson*, 26 F.2d 972 (2d Cir. 1928) ....................................... 9

**Rules**

1118 .......................................................................................................... 11

15 U.S.C. § 1051 ........................................................................................ 1, 6

15 U.S.C. § 1116(d) ...................................................................................... 17

15 U.S.C. § 1125(a) ............................................................................................ 10

15 U.S.C. § 1125(c) ....................................................................................... 10, 11

15 U.S.C. § 1125(c)(2) ....................................................................................... 11

15 U.S.C. § 1127 ................................................................................................ 11

15 U.S.C. §§ 1117(a) ......................................................................................... 11

H.R. Rep. No. 374, 104th Cong., 1st Sess. 3, reprinted in 1995 U.S.C.C.A.N. 1029, 1030) ....... 11

N.Y. Gen. Bus. Law § 360-1 .......................................................................... 10, 11

I.    **INTRODUCTION**

   A.    **The Present Action**

   This memorandum is in support of an ex parte application to immediately restrain counterfeiting and infringement of Plaintiffs' trademarks in violation of the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq* (the "Lanham Act").   Plaintiffs seek a Temporary Restraining Order; an Order permitting the seizure of counterfeit and infringing merchandise, including any equipment used in the manufacture of same; the setting of a hearing on Plaintiffs' request for a Preliminary Injunction; and the issuance of John Doe Summonses.

   An ever increasing problem in the United States is the sale of counterfeit merchandise. Despite many lawsuits filed by the owners of valuable trademarks and counterfeiters continue to surreptitiously churn out their inferior wares and flood the market with cheap knock-offs.   Like parasites, the counterfeiters' activities are sustained by the owners' reputations for high quality merchandise.   Unfortunately, members of the consuming public, unable to distinguish between the counterfeit and authentic merchandise, inevitably attribute defects in the bogus merchandise to the owners.   Moreover, the counterfeiters' illicit operations deprive those owners of billions of dollars in profit and city and state governments of millions of dollars in tax revenues.

   Counterfeiters are notoriously hard to apprehend and enforcement is perpetually an uphill battle.   Actual experience has proven time and time again that once a counterfeiter realizes he is about to be apprehended, he invariably will conceal or destroy any relevant business records and temporarily transfer his inventory to another counterfeiter for safekeeping. For this reason, conventional restraining orders are largely ineffective. Easy money and substantial cash profits, are no match for court orders.

   Defendants in this action can similarly be expected to divest themselves of their inventory of counterfeit merchandise and any relevant business records absent the issuance of an

ex parte seizure order. Confronted with the loss of their inventory and a substantial adverse judgment, it is unrealistic to expect them to produce, voluntarily, their contraband merchandise.

**B.    The North Face Apparel Corp. and VF Outdoor, Inc.**

Plaintiff The North Face Apparel Corp. is a corporation duly organized and existing under the laws of the State of Delaware, with a corporate address of 3411 Silverside Road, Wilmington, DE 19810.   Plaintiff VF Outdoor, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with a corporate address of 2701 Harbor Bay Pkwy, Alameda, CA 94502.  (Plaintiff The North Face Apparel Corp. together with VF Outdoor, Inc. are collectively referred to as "TNF" or "Plaintiffs").

Plaintiffs, through their affiliates and licensees, manufactures, markets, distributes, and sells various types of outdoor apparel, outerwear, equipment, and accessories, including fleece jackets and other products for which they are known worldwide.   TNF's proprietary brands include THE NORTH FACE, the world's most famous cold weather apparel brand bearing Plaintiffs' trademarks as defined in paragraph 11 of the Complaint ("Plaintiffs' Products").   TNF products are distributed and sold through its company owned retail stores, authorized retail and department stores throughout the United States, and websites, including www.thenorthface.com. TNF has and is conducting business in interstate commerce, in the State of New York, and in this judicial district.

**C.    Defendants' Wrongful Acts**

TNF is aware that Defendants are engaged in the manufacture, distribution, sale and/or offering for sale of unauthorized merchandise bearing counterfeits and/or infringements of TNF trademarks as fully set forth in the Declarations submitted herewith. It is impossible to quantify the damage those sales will cause to Plaintiffs' reputation and future sales.

It is imperative that, in addition to being able to promptly halt Defendants' distribution of

2

infringing goods, Plaintiffs are able to seize whatever quantity of counterfeit and/or infringing merchandise is within Defendants' custody or control.  This includes the machines and materials used to manufacture the merchandise as well as the supplies of labels and packaging containing counterfeits and infringements of TNF trademarks.

As the Declarations demonstrate, Plaintiffs' experience is that manufacturers and sellers of counterfeit and/or infringing products are likely to destroy the evidence of their infringements and/or remove their illegal products and flee the jurisdiction if notified of the pendency of the action before issuance of an injunction.  If, therefore, Defendants are given notice of the pendency of Plaintiffs' application for a temporary restraining order and seizure order, they may destroy, conceal or remove their illegal merchandise, the equipment and materials they use to manufacture or produce it, and the records related thereto. This Court would thereby be precluded from granting Plaintiffs effective relief against Defendants' infringing activities.

Accordingly, Plaintiffs request the entry of a temporary restraining order, without notice, as well as an order directing the immediate seizure of the counterfeit goods and supplies. Without entry of these orders, neither this Court nor Plaintiffs will be able to prevent the disappearance of the counterfeit goods, or prevent the destruction of crucial evidence. A temporary restraining order and a seizure order are therefore critical to protect Plaintiffs' rights.

## II.    PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION IN THIS COUNTERFEITING CASE

Plaintiffs are entitled to the requested temporary restraining order and preliminary injunction because they can demonstrate that they will suffer irreparable harm if Defendants are not enjoined promptly, and either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits of this action to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party (Plaintiffs) requesting the preliminary

3

relief. *See, Jeffrey Millstein, Inc. v. Gregor, Lawlor & Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995);

*Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77-78 (2d Cir. 1994); *Arthur Guinness &*

*Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984); *Dallas Cowboy*

*Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206-07 (2d Cir. 1979);  *K.H. v.*

*Vincent Smith School*, No. CV-06-0319, 2006 U.S. Dist LEXIS 22412 (E.D.N.Y. Mar. 29, 2006);

*Jordan v. Can You Imagine, Inc.*, No. 04 Civ. 4696, 2005 U.S. Dist. LEXIS 8726 (S.D.N.Y. May

12, 2005); *Jeral Trading Corp. v. Weinstein*, 1995 No. 95 Civ. 0057 U.S. Dist. LEXIS 20119

(S.D.N.Y. 1995); *CBS, Inc. v. Cineamerica Distributing Corp.*, No. 78 Civ. 2245, 1978 U.S.

Dist. LEXIS 14919 (S.D.N.Y. Oct. 17, 1978).

### A.    Defendants' Acts Threaten Irreparable Harm

Defendants' infringing activities must be stopped immediately in order to prevent further

diversion of sales from Plaintiffs and harm to Plaintiffs' reputation from the sale of counterfeit

merchandise. Defendants' continued infringing activities result in irreparable harm to Plaintiffs.

Many courts in the Second Circuit have held that a prima facie showing of trademark

infringement creates a presumption that the trademark holder has suffered irreparable harm. *See,*

*e.g.*, *Natural White, Inc. v. Dentorium Products Co.*, No. 00-7173 2000 U.S.App. LEXIS 7755

(2d Cir. April 25, 2000); *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d

Cir. 2000); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997);

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988); *Omega Importing Corp. v.*

*Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *Christopher Norman Chocolates,*

*Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F.Supp.2d 432 (S.D.N.Y. 2003).

### B.    The Harm to the Plaintiffs Greatly Outweighs Any Hypothetical Injury to the Defendants

Plaintiffs have expended substantial efforts over the years to maintain, grow and expand

their enviable reputation and the goodwill associated with TNF products. The harm done to that reputation and goodwill by allowing Defendants' to use copies of TNF trademarks in connection with goods identical in kind to those sold by Plaintiffs is greatly outweighed by any hypothetical injury to Defendants who commit trademark infringement on seemingly a daily basis.

There is serious doubt that this Court should even consider any alleged commercial interests that Defendants may assert, inasmuch as Defendants are deliberately plagiarizing and trading upon Plaintiffs' goodwill. *See, e.g.*, *My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934); *Florists' Transworld Delivery, Inc. v. Originals Florist & Gifts, Inc.*, No. 00 Civ. 4458, 200 U.S. Dist. LEXIS 16869 (N.D. Ill. Nov. 9, 2000); *Ventura Travelware Inc. v. A to Z Luggage Co., No. 86 CV 13,* 1986 U.S. Dist. LEXIS 18022 (E.D.N.Y. Nov. 6, 1986); *Joanna Farms Inc. v. Citrus Bowl Inc.*, 468 F. Supp. 866 (E.D.N.Y 1978); *Colgate-Palmolive Co. v. North Am. Chem. Corp.*, 238 F. Supp. 81, 87 (S.D.N.Y. 1964). However, even if such interests are weighed, this Court should give greater consideration to the fact that Defendants are believed to have been distributing the infringing merchandise for a short period of time and the property rights which Defendants are blatantly appropriating are the result of many years of significant effort by, and expense to, Plaintiffs. *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir. 1962); *Blue Bell, Inc. v. Maverick Sportswear, Inc.*, 184 U.S.P No. 74 Civ. 1974 U.S. Dist. LEXIS 7797 (S.D.N.Y. July 1, 1974). *See generally*, *Jeral Trading Corp. v. Weinstein*, *supra*.

### C.   Plaintiffs Will Succeed on the Merits of This Action

Defendants have committed trademark counterfeiting and infringement. Plaintiffs have long and extensively used their trademarks on apparel. As previously detailed, TNF is the owner of valid U.S. Trademark Registrations. By contrast, Defendants, upon information and belief, have begun their use in commerce of the infringing trademarks, and trade names of Plaintiffs,

very recently.

It is a fundamental principle of trademark law that the first party to use a trademark in conjunction with goods has the right to prevent others from subsequently adopting a confusingly similar mark on such goods. *See Oral-B Lab, Inc. v. Mi-Lor Corp.*, 810 F.2d 20 (2d Cir. 1987); *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127 (2d Cir. 1982); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975); *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir. 1969); *Bacardi & Co. v. N.Y. Lighter Co.*, No. 97-CV-7140, 2000 U.S. Dist. LEXIS 19852 (E.D.N.Y. Sept. 5, 2000); *Mortellito v. Nina of California, Inc.*, 335 F. Supp. 1288 (S.D.N.Y. 1972). Accordingly, Plaintiffs are entitled to preliminary injunctive relief under any one of four separate legal doctrines:

### 1.    Plaintiffs' Right to Relief Under the Trademark Act of 1946

TNF is the owner of valid U.S. Trademark Registrations. Under the Trademark Act of 1946 (15 U.S.C. § 1051 *et seq.*), such registration gives the Plaintiffs powerful statutory rights. *See Reddy Communications, Inc. v. Environmental Action Found.*, 471 F. Supp. 936 (D.D.C. 1979). For example, Section 7(b) of the Act (15 U.S.C. § 1057(b)) provides, in pertinent part:

> A certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods… specified in the certificate, subject to any conditions and limitations stated therein.

Therefore, a federally registered trademark is afforded a strong presumption of validity. *See Miss Universe, Inc. v. Patricelli, supra; Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 542 (2d Cir. 1956); *The Deal, LLC v. Korangy Publ'g*, 309 F. Supp. 512 (S.D.N.Y. Jan. 21, 2004); *Nature's Bounty, Inc. v. Super X Drugs Corp.*, 490 F. Supp 50 (E.D.N.Y. 1980); *New York Yellow Pages, Inc. v. Citibank, N.A.*, 480 F. Supp 77 (S.D.N.Y.

6

1979).

The test of infringement includes an analysis of several factors including the strength of Plaintiffs' marks, the degree of similarity between the goods, and the infringer's purpose in adopting its mark. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.* 454 F.3d 108 (2d Cir. 2006); *Grotrian, Helfferich, Schulz v. Steinway*, 523 F.2d 1331 (2d Cir. 1975); *Miss Universe Inc. v. Patricelli, supra*; *American Ass'n for Advancement of Science v. Hearst Corp.*, 498 F. Supp. 244, 254 (D.D.C. 1980); *RJR Foods, Inc. v. White Rock Corp.*, No. 77 Civ. 2329 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y. Oct. 6, 1978). Analysis of these factors indicates, indisputably, that Defendants have intentionally infringed Plaintiffs' trademarks.

### a. The Strength of Plaintiffs' Marks

As reflected in the accompanying declarations, Plaintiffs' trademarks are well-known. The fact that TNF trademarks are federally registered, in addition to creating a strong presumption of validity, stands as further proof of the strength of the marks. *See American Home Products v. Johnson Chem. Co.*, 589 F.2d 103, 106 (2d Cir. 1977); and *Big Star Entertainment, Inc. v. Next Big Star, Inc.*, 105 F. Supp.2d 185 (S.D.N.Y. 2000).

### b. The Degree of Similarity Between the Mark

Defendants have chosen, out of the infinite number of marks available, ones that are virtually identical to those of Plaintiffs. There is clearly no defense available to Defendants regarding their choice of mark. It has often been held that the law does not look favorably on the businessman who, out of the vast variety of marks available, chooses as a trademark one which comes as close as he dares to a well-known mark on an identical product. *See, e.g., A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972); and *Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.*, No. 95 Civ. 4008 1995 U.S. Dist. LEXIS 12849 (S.D.N.Y. Sept. 6, 1995).

7

c.      The Closeness of the Products

Defendants use their marks on products which are identical in kind, but not in quality, to those of the Plaintiffs.  The products could not be any more similar.

d.      Defendants' Purpose in Adopting Plaintiffs' Trademarks

TNF trademarks are world famous. Defendants chose marks which are virtually identical to such strong marks conclusively demonstrates Defendants' desire and purpose to trade upon Plaintiffs' goodwill. *See Miles Shoes, Inc. v. R.H. Macy & Co.*, 199 F.2d 602, 603 (2d Cir. 1952), *cert. denied*, 345 U.S. 909 (1953); *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F. Supp. 1108 (S.D.N.Y 1981); *Londontown Mfg. Co. v. Cable Raincoat Co.*, 371 F. Supp. 1114 (S.D.N.Y. 1974); and *Fund of Funds, Ltd. v. First Am. Fund of Funds, Inc.*, 274 F. Supp. 517, 527 (S.D.N.Y. 1967). *See, e.g., Mister Softee, Inc. v. Valdez*, No. 01 Civ. 12742, 2002 U.S. Dist. LEXIS 6450 (S.D.N.Y. Apr. 15, 2002). *Cf. National Info. Corp. v. Kiplinger Washington Editors*, 771 F. Supp. 460, 468 (D.D.C.1991).  Defendants' choice was deliberate and their intentions were malicious.

**2.      Plaintiffs' Right to Relief Under Common Law**

Plaintiffs will also prevail under the common law of unfair competition.  *See Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997); *Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 Civ 4487, 2005 U.S. Dist. LEXIS 18137 (S.D.N.Y. Aug. 24, 2005);  *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 563 (S.D.N.Y. 1978); *Mortellito v. Nina of California, Inc.*, *supra* at 1295; and *Armco Steel Corp. v. Int'l Armament Corp.*, 249 F. Supp. 954 (D.D.C. 1966).

Defendants have infringed the world famous TNF trademarks in an obvious attempt to establish an association or connection between their inferior goods and the superior quality and business of Plaintiffs. Such acts constitute palming off, deception, and misappropriation of

8

Plaintiffs' property rights. All of these blatant acts are actionable under the common law of unfair competition and entitle Plaintiffs to immediate injunctive relief. *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000); *Sears, Roebuck & Co. v. Sears Financial Network*, 576 F. Supp. 857 (D.D.C. 1983); and *Fund of Funds, Ltd.*, *supra* at 524.

For example, in *Apollo Distrib. Co. v. Apollo Imports, Inc.*, 341 F. Supp. 455 (S.D.N.Y. 1972), the court upheld the protection of a long-established trademark and trade name under both Section 43(a) of the Trademark Act and the general law of unfair competition. In granting summary judgment, Judge Weinfeld stated, as to the claim of unfair competition:

> Defendants' selection of a name long used by plaintiff, which name had become identified in the public mind with products distributed by plaintiff, strongly suggests and warrants a finding of defendants' deliberate purpose to capitalize on the good will plaintiff had built up over the years []. To permit defendants' continued use of 'Apollo' would unfairly give it the benefit of Plaintiffs' well-established reputation and of its extensive and costly advertising campaign over the years.

*Id.* at 459 (citation omitted).

As Judge Learned Hand explained in *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928):

> If another uses [one's trademark], he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury . . . unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. This is a case of unlawful use of another's name and reputation, and plaintiff is entitled to relief.

Judge Hand's oft-quoted summary of the law in *Yale Elec. Corp.*, which has survived the test of time, is directly applicable to the present facts. This Court should not permit Defendants to trade upon Plaintiffs' reputation, which is symbolized by TNF trademarks, nor should this Court allow Defendants to tarnish Plaintiffs' reputation by the substitution of Defendant's own goods. *See,*

9

*Safeway Stores, Inc.*, *supra* at 498.

### 3.   Plaintiffs' Right to Relief Under Section 43(a) of the Trademark Act of 1946

Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), provides, in pertinent part, that:

> Any person who shall affix, apply or annex, or use in connection with any goods or services,... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce... shall be liable to a civil action... by any person who believes that he is or is likely to be damaged by the use of such false description or representation.

Defendants' use of the TNF trademarks are a false description or representation of the source or origin of goods in violation of this statute and is a separate basis for granting a preliminary injunction. *See Sears, Roebuck & Co.*, *supra*, at 861; *Mortellito v. Nina of California, Inc.*, *supra*, at 1294; *Apollo Distrib. Co. v. Apollo Imports, Inc.*, *supra*, at 458; and *Envirosafe Services, Inc. v. Envirosure Mgmt. Co.*, No. 87-4659, 1989 U.S. Dist. LEXIS 70 (E.D. Pa. July 5, 1989).

### 4.   Plaintiffs' Right to Relief Under Section 43(c) of the Trademark Act of 1946

Plaintiffs also assert a federal dilution claim under Section 43(c) of the Lanham Act and a state dilution claim under N.Y. Gen. Bus. Law § 360-1. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), forbids dilution of famous marks and provides injunctive relief against, "commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark...." 15 U.S.C. § 1125(c). Dilution is defined as, "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between

the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or

deception." 15 U.S.C. § 1127. Similarly, New York law provides:

> Likelihood of injury to business reputation or of dilution of the
> distinctive quality of a mark or trade name shall be a ground for
> injunctive relief in cases of infringement of a mark registered or
> not registered or in cases of unfair competition, notwithstanding
> the absence of competition between the parties or the absence of
> confusion as to the source of goods or services.

N.Y. Gen. Bus. Law § 360-1 (McKinney's 1998).[1] In addition, upon a showing that the person

against whom the injunction is sought, "willfully intended to trade on the owner's reputation or

to cause dilution of the famous mark," a party may obtain further relief under 15 U.S.C. §§

1117(a) and 1118. *See* 15 U.S.C. § 1125(c)(2).

   To prevail on the dilution claims, Plaintiffs must show (1) ownership of a famous or

distinctive mark and (2) a likelihood of dilution. *See Clinique Labs, Inc. v. Dep Corp.*, 945 F.

Supp. 547, 561 (S.D.N.Y. 1996); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497,

506 (2d Cir. 1996). Dilution can be found upon a showing of either blurring or tarnishment. *See*

*Clinique*, 945 F. Supp. at 561 (*citing* H.R. Rep. No. 374, 104th Cong., 1st Sess. 3, reprinted in

1995 U.S.C.C.A.N. 1029, 1030); *Hormel*, 73 F.3d at 506 (2d Cir. 1996) (same standard used for

state dilution claim).

   a.   Ownership of a Famous and Distinctive Mark

   Section 43(c) sets out the factors relevant to the determination of whether a mark is

famous or distinctive.[2] "The determination of whether a mark is famous and distinctive under

---

[1] The analysis under the federal anti-dilution law and the state anti-dilution law is the same and both statutes essentially require the same elements to be met. *Hartz & Co., Inc. v. Italia, Inc.*, 97 Civ. 5657 (RO), 1998 U.S.Dist. LEXIS 3716 at * 6 n.9 (S.D.N.Y. Mar. 24, 1998).

[2] The factors from 15 U.S.C. § 1125(c)(1) are:

(continue)

Section 43(c) is similar to the analysis for strength of the mark for trademark infringement purposes." *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 749 (S.D.N.Y. 1997) (*citing Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989) and *Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1277 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995)). As discussed above, with respect to the strength of Plaintiffs' marks in the context of Plaintiffs' trademark infringement claim, Plaintiffs do, in fact, own famous and distinctive marks.

        b.     <u>Likelihood of Dilution</u>

           i.     Likelihood of Dilution by Tarnishment

    "Tarnishment may occur when the Plaintiffs' marks are used by the defendant in association with unwholesome or shoddy goods or services." *Clinique*, 945 F. Supp. at 562 (*citing Hormel*, 73 F.3d at 507; *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)). As a result of dilution by tarnishment, "'the public will associate the lack of quality or lack of prestige in the defendant's goods with the Plaintiffs' unrelated goods,' . . . [and] the mark loses its ability to serve as a 'wholesome identifier' of Plaintiffs' product." *Hormel*, 73 F.3d at 507

------------------------------

(continued)

    (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of the use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services in which the mark is used; (F) the degree of recognition of the mark in trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; (G) the nature and extent of the use of the same similar marks by third parties; and (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(*quoting Deere & Co*, 41 F.3d at 43). "The sine qua non of tarnishment is a finding that Plaintiffs' marks will suffer negative associations through defendant's use." *Hormel*, 73 F.3d at 507.

In the instant case, Defendants' products are shoddy and are of inferior quality compared to Plaintiffs' Products. As a result, TNF trademarks will suffer a negative association through Defendants' continued use of them on their products. A preliminary injunction should be granted based on the likelihood of dilution of Plaintiffs' trademarks by tarnishment.

### ii.    Likelihood of Dilution by Blurring

Dilution by blurring occurs when, "customers or prospective customers . . . see the Plaintiffs' marks used on a plethora of different goods and services," *Hormel*, 73 F.3d at 506, and where "'the defendant uses or modifies the Plaintiffs' trademarks to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the Plaintiffs' product.'" *Clinique*, 945 F. Supp. at 562 and *Hormel*, 73 F.3d at 506 (*quoting Deere & Co*, 41 F.3d at 43). The six relevant factors for assessing dilution by blurring under Section 43(c) of the Lanham Act are: (1) the similarity of the trademarks; (2) similarity of the products; (3) the sophistication of consumers; (4) renown of the senior mark; (5) renown of the junior mark; and (6) predatory intent. *See Clinique*, 945 F. Supp. at 562 n. 22.

As discussed earlier, because of the likelihood of confusion under Section 43(a) of the Lanham Act, it follows that TNF trademarks are renowned, that TNF trademarks and goods are substantially similar to Defendants' marks and goods, and the relevant consumers are not so sophisticated as to avoid potential confusion. The balance of these factors alone weighs heavily in favor of finding dilution by blurring, especially since defendants' imitative use of Plaintiffs' renowned trademarks on similar, but ultimately inferior, products disallows the senior trademark

from serving as a unique identifier of Plaintiffs' superior products.[3] Therefore, a preliminary injunction should be granted based on the likelihood of dilution of TNF trademarks by blurring.

Although it is not entirely clear how predatory intent should be considered in the analysis of either a federal or state dilution claim, this factor is not dispositive. For instance, it is not clear whether a showing of predatory intent is required for, or merely relevant to, a finding that the state anti-dilution statute has been violated. *Deere & Co. v. MTD Products, Inc.*, 41 F.3d 39, 45-46 (2d Cir. 1994). Furthermore, different courts in the Second Circuit have not considered predatory intent in the analysis of a dilution claim under the Lanham Act. *See, e.g., Clinique*, 945 F. Supp. at 562 & n.22; *Federal Express Corp. v. Federal Expresso, Inc.*, No. 97-CV-1219 1998 U.S. Dist. LEXIS 15607 at *59-60 (N.D.N.Y. Sep. 30, 1998) (*citing Clinique*); *Leslie Fay Cos. v. Leslie Fay Cos.*, 216 Bankr. 117, 134 (S.D.N.Y. 1997); further, such an approach has been questioned by at least one court outside of this Circuit. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. Of Travel Dev.*, 955 F. Supp. 605, 620 n.28 (E.D.Va. 1997).[4] In any event, it is clear in the instant matter that Defendants' use of TNF trademarks show that they fully intended to mimic Plaintiffs' marks in order to take advantage of the image and

---

[3] In the instant matter, there is technically no junior mark, since Defendants are simply imitating Plaintiffs' renowned senior mark. However, the renown of the junior mark factor does not always need to be included in a dilution analysis. *See Clinique*, 945 F. Supp. at 563; *Lexington Management Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 290 (S.D.N.Y. 1998) (where renown of the junior user's mark is a factor that has marginal relevance in cases which involve newly launched products or services).

[4] The law regarding predatory intent is unclear, especially with respect to Section 43(c). The Second Circuit has used this factor in analyzing state dilution claims, but the district courts in the Second Circuit tend not to use this factor for Section 43(c) claims. Judge Scheindlin's opinion, *Clinique Labs, Inc. v. Dep Corp.*, 945 F. Supp. 547, 562 n.23 (S.D.N.Y. 1996), is treated as the leading authority on this issue, and Judge Scheindlin deliberately does not apply this factor in the dilution by blurring analysis in that case. However, in the same year, but prior to the *Clinique* decision, Judge Scheindlin did consider predatory intent in *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F. Supp. 204, 213 (S.D.N.Y. 1996), but upon a motion for reconsideration, 1996 U.S. Dist. LEXIS 11079 at * 4 (S.D.N.Y. Aug. 2, 1996), she appeared to back away from considering predatory intent as a factor.

goodwill created by Plaintiffs. Such acts constitute predatory intent. *See Clinique*, 945 F. Supp. at 562 n.22. A preliminary injunction, among other relief, should be granted since "predatory intent – the deliberate adoption of a junior mark to benefit from the fame of a senior mark- increases the likelihood that a junior mark will be used in a manner that will lessen the capacity of a famous mark to identify goods and services." *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 955 F. Supp. at 620 n.28 (E.D. Va. 1997).

TNF trademarks have designations of origin which fit precisely within the statutory definition. Confusion follows if Defendants are permitted to use their infringing trademarks, especially on goods which are identical in kind to those of Plaintiffs. Even if Plaintiffs were affirmatively required to establish secondary meaning in its marks, the declarations submitted in support of this Motion establish that TNF trademarks have long served as the identifier of a single source of goods.

## III.   BECAUSE THE ULTIMATE RELIEF PLAINTIFFS SEEK IN THIS ACTION WILL ALMOST CERTAINLY BE FRUSTRATED IF NOTICE IS GIVEN, A TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER SHOULD BE ISSUED EX PARTE

### A.   Plaintiffs' Prosecution of This Action Will be Rendered Futile if a Temporary Restraining Order and Seizure Order is Not Issued Ex Parte or if Defendants Receive Notice of the Pendency of This Action Prior to Execution of the Seizure Order

Rule 65 (b) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted to the requesting party when irreparable injury may occur before a hearing on the preliminary injunction may be held. The purpose of such an order is to preserve the status quo. *See Onan Corp. v. United States*, 476 F. Supp. 428, 433 n.1 (D. Minn. 1979). Ex parte relief is particularly appropriate in infringement and counterfeiting cases, because of the likelihood that notice itself will disturb the status quo and Defendants will attempt to hide their illegal conduct.

In the Second Circuit's landmark decision, *Matter of Vuitton et Fils, S.A.,* 606 F.2d 1, (2nd Cir. 1979), the Court granted a temporary restraining order, without notice, finding that in other suits brought by the same Plaintiffs, notice itself alerted various defendants and gave them sufficient time to transfer their counterfeit goods to other unknown persons for the purpose of avoiding effective Court relief. When an ex parte temporary restraining order is the only method by which the status quo can be preserved, so that the Court can provide effective final relief, it should be granted. *Id.* at 4. The court summarized the law on the notice requirement as follows:

> If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of "notice," and it is surely not what the authors of the rule either anticipated or intended.

*Id.* at 5. *See also Lorillard Tobacco Co. v. Canstar (U.S.A.), Inc.*, No. 03 Civ. 4769, 2005 U.S. Dist. LEXIS 38414 (N.D. Ill. Aug. 24, 2005).

Other federal courts have recognized that ex parte relief is often the only effective tool for combating widespread infringement or counterfeiting activity. *See, e.g., Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung.,* No. 87 Civ. 8989, 1990 U.S. Dist. LEXIS 3953 (S.D.N.Y. April 10, 1990); and *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249 (S.D. Fla. 1982).

Counsel's years of experience in policing intellectual property infringement have established that an infringer rarely turns over more than a token number of infringing products if notice is given and he has a chance to dispose of or hide his merchandise. More importantly, the information documenting the extent of Defendants' manufacture and/or distribution of these counterfeit products might also be concealed should notice be issued.

**B.     The Lanham Act Authorizes Seizure of Defendants' Infringing Products**

The Lanham Act vests this Court with the authority to seize the goods bearing the

counterfeit marks involved, the means by which the infrigers make such marks, and the records

documenting the manufacture, sale or receipt of items involved in counterfeiting.  15 U.S.C. §

1116(d) provides, in pertinent part:

> …with respect to a violation that consists of using a counterfeit
> mark in connection with the sale, or distribution of goods or
> services, the court may, upon ex parte application, grant an
> order . . . providing for the seizure of goods and counterfeit marks
> involved in such violation and the means of making such marks,
> and records documenting the manufacturer, sale or receipt of
> things involved in such violation. 15 U.S.C. § 1116(d).

Because Plaintiffs have established a prima facie case of trademark counterfeiting and

infringement by Defendants, it is also appropriate for the Court to grant Plaintiffs' request for a

Seizure Order in accordance with the provisions of the Lanham Act.

## IV.    <u>CONCLUSION</u>

As recognized in the *Vuitton* case, the typical counterfeiter runs a fly-by-night operation

whose response to an injunction with notice is to transfer or conceal his stock of infringing goods

and destroy any records reflecting his activities. Defendants' adoption of such flagrant copies of

the Plaintiffs' trademarks show that Defendants are not good faith competitors. This is a case of

outright counterfeiting and deception.

This Court has the authority to issue a temporary restraining order against Defendants

preventing them from any further infringement of the Plaintiffs' trademarks. Moreover, this Court

has the authority to order the seizure of the counterfeit goods, the equipment and materials for

producing them and Defendants' records pending a hearing on the preliminary injunction in this

action.  Defendants cannot be damaged by the Court's granting of a temporary restraining and

seizure order as a hearing would be set within ten days, enough time for Defendants to justify

their counterfeiting if indeed they care to try.

Plaintiffs respectfully request that the Court grant the relief requested herein.

DATED:      New York, New York            Respectfully submitted,
            August 18, 2015                **BAKER HOSTETLER, LLP**

                                          By: _____
                                             Heather J. McDonald, Esq. (HM 3320)
                                             45 Rockefeller Plaza
                                             New York, NY 10111
                                             (212) 589-4200
                                             Attorneys for Plaintiffs